# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

Susan DeHerrera and Joe Guerrero
Plaintiff/Petitioner - Appellant,

v.

Huerfano County, a municipality
Jeff Bensman, in his individual capacity
Terry Sandoval, in his individual capacity
Sam Jensen, in his individual capacity

Defendant/Respondent -  Appellee.

Case No. 26-1138

Appellant/Petitioner's Opening Brief

## NOTICE AND INSTRUCTIONS

If you proceed on appeal pro se, the court will accept a properly completed Form A-12 in lieu of a formal brief. This form is intended to guide you in presenting your appellate issues and arguments to the court. <u>If you need more space, additional pages may be attached</u>. A short statement of each issue presented for review should precede your argument. Citations to legal authority may also be included. This brief should fully set forth all of the arguments that you wish the court to consider in connection with this case.

New issues raised for the first time on appeal generally will not be considered. An appeal is not a retrial but rather a <u>review</u> of the proceedings in the district court. A copy of the completed form must be served on all opposing counsel and on all unrepresented parties and a proper certificate of service furnished to this court. A form certificate is attached.

**APPELLANT/PETITIONER'S OPENING BRIEF**

## 1. Statement of the Case

This appeal arises from the district court's order granting summary judgment and qualified immunity to Defendants Jeff Bensman and Terry Sandoval, employees of Huerfano County, on Plaintiffs' Fourth Amendment claims arising from a warrantless investigative intrusion onto Plaintiffs' private property.

Plaintiffs Joe Guerrero and Susan DeHerrera resided on rural property in Huerfano County while establishing residential utility infrastructure necessary for habitation, including installation of a water well pump system by a licensed contractor. Defendants entered Plaintiffs' property without a warrant, without consent, and without observing any identifiable violation from the roadway. Defendants then refused repeated demands to leave, continued investigating after verifying the contractor's licensing status, and physically confronted Plaintiff Guerrero during the encounter.

Plaintiffs filed suit under 42 U.S.C. § 1983 alleging violations of the Fourth Amendment, including unlawful search, unlawful investigative intrusion into protected effects, excessive force, and related constitutional violations.

The district court granted Defendants' motions for summary judgment, concluding that the area constituted an "open field" not protected by the Fourth Amendment and further

holding that Defendants were entitled to qualified immunity. Consequently, Plaimtiffs' motion of summary judgment was denied.

Plaintiffs appeal those determinations.

### 2. Statement of Facts Relevant to the Issues Presented for Review.

Plaintiffs resided on property in Huerfano County, Colorado, in a camper/RV while developing infrastructure necessary for residential occupation, including installation of a well pump and associated water system. The work was being performed by a licensed contractor.

Prior to entering the property, Defendant Bensman surveilled Plaintiffs' property from La Deora Boulevard. (Bensman' Body Worn Camera BWC 0:00-1:16). Defendants observed only a boom extending from a truck and did not identify any visible code violation from the roadway.

Defendants nevertheless entered Plaintiffs' private property without a warrant or consent. (BWC 1:49-2:08). Defendant Sandoval stated, "I have a right to be here," while Defendant Bensman asserted that, as "an officer of the court," he did not need "special

documentation" to enter private property. (BWC 1:49–2:08; 5:36-45).

At the time of entry:
- the well infrastructure was under active installation;

- the water system components themselves were not visible from the roadway;

- and Defendants entered specifically to investigate the activity and verify

  contractor compliance.

(BWC 0:46-1:16, 4:31-4:53; Doc. 72 at 10-12).

Plaintiffs repeatedly demanded that Defendants leave the property. (DEH Video at 2:03-2:12, 3:13-3:33; BWC 2:17-2:19; 6:01-6:07). Defendants refused.

During the encounter, Plaintiff Guerrero positioned himself between Defendants and the worker in an effort to stop the intrusion. (BWC 2:20-2:29). The record includes evidence that Defendant Bensman physically pushed and jabbed Plaintiff Guerrero during the confrontation. (DEH Video 2:12-2:19).

The video evidence further demonstrated that Plaintiffs questioned why Defendants remained after acknowledging that no code violation had been identified. (DEH Video 2:49-4:43)

The County's own written policy required an administrative warrant when access to property was denied. (Doc. 20-2 at 10–11). Despite that policy, Defendant Bensman testified that he "always" investigated properties without obtaining warrants and that his training consisted largely of reviewing the Code Enforcement Handbook and receiving guidance from the County Attorney. (Doc 20-4 at 30-31).

The district court granted summary judgment to Defendants, concluding that the area at issue constituted an "open field" and further holding that Defendants were entitled to qualified immunity.

This appeal followed.

**3. Statement of Issues.**

**a. First Issue:**

Whether the district court erred by failing to recognize that Defendants conducted a warrantless investigative search of Plaintiffs' protected effects.

**Argument and Authorities:**

The district court improperly framed this case solely as an "open fields" matter while

failing to analyze the independent Fourth Amendment protection afforded to Plaintiffs' effects.

The Fourth Amendment protects not only "houses," but also "persons, papers, and effects." U.S. Const. amend. IV. In United States v. Jones, the Supreme Court reaffirmed that a physical intrusion upon constitutionally protected property for the purpose of obtaining information constitutes a search. 565 U.S. 400, 404–05 (2012).

Here, Defendants did not merely observe from a lawful public vantage point. Defendant Bensman surveilled Plaintiffs' property from La Deora Boulevard before entering the Property. (BWC 0:00-0:45). Both Defendants then physically entered Plaintiffs' private property without a warrant or permission. (BWC 1:49-2:19).
At the time of entry:

- the well infrastructure was under active installation by a licensed contractor;
- no visible code violation had been identified from the roadway; and
- the water-system components were not visible until Defendants approached the site itself.

(BWC 4:31-4:53; Doc. 72 at 10-12).

Defendants' conduct therefore exceeded mere visual observation and became an active investigation into Plaintiffs' domestic infrastructure and personal property.

Even assuming arguendo that the surrounding land constituted an "open field," the effects located there retained constitutional protection. The well system, pump installation, and associated infrastructure were personal property and essential domestic utilities intended to support habitation on the Property.

The district court failed to analyze this separate constitutional protection and instead treated the encounter as simple observation of a construction site. The record shows otherwise. Defendants entered the Property specifically to determine what Plaintiffs were doing, inspect the contractor's status, and investigate the well infrastructure itself. (BWC 1:49-2:08; 4:31-4:53).

That conduct constitutes a search under Jones.

**b.     Second Issue:**

Whether the district court misapplied the open fields doctrine to justify Defendants' conduct.

**Argument and Authorities:**

The open fields doctrine permits limited observation from lawful vantage points, but it does not authorize investigative entry onto private property to inspect protected effects.

The district court concluded that Defendants merely approached an area visible from an open field. But the record demonstrates otherwise.

The well infrastructure was located within close proximity of the RVs and formed a compact, actively used residential area on an otherwise much larger 142-acre parcel. Plaintiffs' evidence showed:

- the well site sat below roadway grade;
- the infrastructure itself was not visible from the road; and
- Defendants entered the Property only after observing a boom extending from a truck.

(DEH Video 2:48-3:34; Doc. 70-2 at 12).

Defendants admitted they entered to verify licensing and investigate suspected activity. (BWC 4:31-4:53).

The district court further emphasized the mobile nature of Plaintiffs' RV in concluding that the Property lacked traditional curtilage protections. But even if the RV is not

considered a permanent dwelling, that determination does not eliminate Fourth Amendment protection for Plaintiffs' effects.

The district court repeatedly characterized the incident as involving generalized "construction" activity. That characterization minimized evidence demonstrating that the activity involved residential utility infrastructure supporting Plaintiffs' occupied dwelling.

The summary judgment record reflected that Plaintiffs were residing on the Property while establishing water access necessary for habitation through installation of a well pump and associated infrastructure intended for residential use. By characterizing the activity primarily as generalized "construction," the district court drew inferences favoring Defendants rather than Plaintiffs, contrary to Rule 56 standards.

The relevant inquiry is not solely whether the surrounding land constituted curtilage, but whether Defendants physically intruded upon protected property to gather information. Jones, 565 U.S. at 404–05.

Because Defendants physically entered Plaintiffs' Property and investigated protected effects without a warrant, the district court erred in applying the open fields doctrine as a

complete bar to Plaintiffs' claims.

Evidence before the district court showed that Plaintiffs actively resided at the site, maintained security for the occupied area, utilized multiple RVs associated with habitation and work activities, and were installing water infrastructure necessary for residential use. (Doc 68-3, pg. 5 at 16-25; pg. 6 at 1-23)

Viewing these facts in the light most favorable to Plaintiffs, a reasonable factfinder could conclude that the well area was functionally integrated with the occupied residential site and that the associated utility infrastructure constituted protected effects supporting domestic life. The district court's contrary conclusion resolved disputed factual inferences in Defendants' favor at summary judgment.

### c. Third Issue:

Whether the district court improperly granted qualified immunity.

### Argument and Authorities:

Qualified immunity protects reasonable mistakes not plainly unconstitutional conduct. The district court erred in granting qualified immunity because the record, viewed in Plaintiffs' favor as required at summary judgment, demonstrates violations of clearly

established law.

First, it was clearly established that physical intrusion onto protected property to obtain information constitutes a search. Jones, 565 U.S. at 404-05.

Second, Plaintiffs repeatedly instructed Defendants to leave the Property, yet Defendants continued their investigation. (BWC 2:17-2:19; 6:01-6:07; DeHerrera Dep. 165:1-4; 184:7-11).

Third, Defendant Bensman used physical force during the encounter. Plaintiff Guerrero positioned himself between Defendants and the worker to stop the intrusion. (BWC 2:20-2:28). The record includes evidence that Bensman pushed and jabbed Plaintiff Guerrero while continuing the investigation. (DEH Video 2:12-2:20).

At summary judgment, courts must construe disputed facts in favor of the non-moving party. Tolan v. Cotton, 572 U.S. 650, 657 (2014). The district court instead minimized the coercive nature of the encounter by characterizing it as a brief inspection.

The record shows otherwise:

- Defendant Bensman entered the Property armed with a firearm, ammunition, and handcuffs. (DEH Video 2:43-2:45 );

- Plaintiffs testified that Defendants' conduct caused fear and distress. (DEH Vid

2:3; DeHerrera Dep. 140:1-12; 161:15-20);

- and the video captured Plaintiffs demanding Defendants leave after consent was denied.

Defendants continued investigating even after confirming the contractor possessed the required permit and license. (BWC 4:31-4:53; 5:49-6:39). No reasonable official could believe that:

- entering private property without a warrant;

- refusing repeated requests to leave;

- continuing an investigation after no violation was found; and

- using force during the encounter

complied with clearly established Fourth Amendment law.

The County's own written policy required a warrant when access was denied. (Doc. 20-2 at 10-11). While internal policy alone does not define constitutional standards, it reinforces that Defendants were on notice that their conduct exceeded lawful authority. Qualified immunity therefore does not apply.

**4.    Do you think the district court applied the wrong law?  If so, what law do you want applied?**

Yes.

The district court improperly treated the case exclusively under the open fields doctrine while failing to analyze the Fourth Amendment protections applicable to Plaintiffs' effects under United States v. Jones.

The court further resolved disputed factual inferences in favor of Defendants rather than Plaintiffs at the summary judgment stage, contrary to Rule 56 and Tolan v. Cotton.

**5.      Did the district court incorrectly decide the facts?  If so, what facts?**

Yes.

The district court's analysis focused heavily on the distance between Defendants and Plaintiffs' RV. However, the relevant inquiry was not merely where Defendants stood, but whether the well site and associated utility infrastructure were functionally integrated with Plaintiffs' occupied dwelling. The record reflected that the pump, cistern, hydrant, and related water-system components were being installed within approximately 10-25 feet of the RV and were intended to provide water service for residential occupation. A reasonable factfinder could conclude that these improvements formed part of the domestic area surrounding the dwelling and constituted either curtilage, protected effects, or both. At minimum, these facts created a genuine dispute that should not have been resolved on summary judgment.

**6.      Did the district court fail to consider important grounds for relief?  If so, what grounds?**

Yes.

The Fourth Amendment inquiry should not have been reduced to a single distance measurement or isolated factor.

The court improperly evaluated each fact in isolation rather than considering whether the combined facts created a reasonable expectation of privacy or at least a genuine dispute regarding the protected nature of the area.

The district court failed to meaningfully address:

- Plaintiffs' effects-based Fourth Amendment arguments;

- the investigative nature of Defendants' intrusion;

- the County's own warrant policy;

- and evidence demonstrating continued investigation after no violation had been identified.

Additionally, the court should have considered the combined circumstances, including:

1. Plaintiffs were actively residing in the RV.

2. The well infrastructure was being installed to provide water for residential occupation.

3. The project included integrated domestic infrastructure (water system, pump, cistern, hydrant, and related residential utilities).

4. The well site was located relatively close to the occupied dwelling compared with the size of the 142-acre parcel.

5. Plaintiffs were physically present during the encounter.

6. Plaintiffs expressly objected to the officials' continued presence.

7. The video reflected Plaintiffs' concerns about prior governmental intrusions.

8. The area was being actively used and monitored rather than left open to the public.

Even if no single fact conclusively established curtilage, the combined circumstances were sufficient for a reasonable factfinder to conclude that the well site and associated infrastructure fell within the protected sphere of the occupied dwelling. Therefore, summary judgment was inappropriate because the district court resolved disputed factual inferences against Plaintiffs rather than viewing the evidence in the light most favorable to them.

**7.      Do you feel that there are any other reasons why the district court's judgment was wrong?  If so, what?**

Yes.

The record further demonstrates systemic failures in supervision and training. Bensman testified that his training consisted primarily of reading the Code Enforcement Handbook and receiving direction from the County Attorney. (Doc 20-4 at 30-31). He further admitted that he "always" conducted investigations without obtaining warrants. (Id.).

The district court further isolated the encounter from the broader factual context reflected in Plaintiffs' video evidence. Plaintiffs described repeated County scrutiny and escalating interactions preceding the incident. (DEH Video 2:49-4:43)

That context bears directly on the reasonableness of Plaintiffs' reactions during the encounter and whether their defensive posture was improperly construed as aggression. The video reflects that Plaintiff became visibly upset after Defendants continued their intrusion despite repeated objections and after Bensman allegedly forced his way past Plaintiff to question workers. Although Plaintiff expressed anger, the video also shows that he did not physically retaliate, strike Defendants, or escalate the encounter beyond

verbal objections. A reasonable factfinder could interpret Plaintiff's conduct as defensive and protective of his wife, workers, and occupied residential area rather than as evidence that the intrusion was inconsequential.

Rather than viewing those facts in Plaintiffs' favor, the Order reduced the encounter to a routine inspection dispute in an "open field," thereby resolving contextual inferences against the nonmoving parties.

These facts reinforce that Defendants' conduct was not an isolated misunderstanding but part of broader institutional failures that contributed to the constitutional violations at issue.

That context bears directly on:

- the reasonableness of Plaintiffs' reactions,
- the coercive nature of the encounter,
- and whether Defendants' conduct was objectively reasonable.

## 8. What action do you want this court to take in your case?

Plaintiffs respectfully request that this Court:

- Reverse the district court's grant of summary judgment and qualified immunity;

- Remand the matter for trial and further proceedings; and

- In the alternative, Plaintiffs request that summary judgment be entered in their favor where no genuine dispute of material fact exists.

**9.  Do you think the court should hear oral argument in this case?  If so, why?**

Plaintiffs respectfully request oral argument because this appeal involves important questions concerning:

- the scope of Fourth Amendment protection for effects located on rural residential property,

- application of the open fields doctrine,

- and the proper limits of qualified immunity in investigative property intrusions.

_____6/1/26_____.
Date

_____
Joe Guerrero, Pro Se Appellant

_____
Susan DeHerrera, Pro Se Appellant

# CERTIFICATE OF SERVICE

I certify that on June 1, 2026, I sent a copy of the Appellants/Petitioners' Opening Brief to:

Leslie L. Schluter
Dagner, Schluter, Weber, LLC
8400 E Prentice, Suite 1401
Greenwood Village, CO 80111
e-mail: lschluter@lawincolorado.com

Matthew J. Hegarty, Esq.
Hall & Evans, LLC
1001 17th Street, Ste 300
Denver, CO 80202
email: hegartym@hallevans.com

William T O'Connell III, Esq
Thompson, COE, Cousins & Irons, LLP
1700 Broadway, Suite 900
Denver, CO 80290
Email: woconnell@thompsoncoe.com

**Via email**

_____6/1/26_____
Date

_____
Joe Guerrero, Pro Se Appellant

_____
Susan DeHerrera, Pro Se Appellant

## CERTIFICATE OF COMPLIANCE

**I certify that the total number of pages I am submitting as my Appellant/Petitioner's Opening Brief is 30 pages or less or alternatively, if the total number of pages exceeds 30, I certify that I have counted the number of words and the total is _____ , which is less than 13,000. I understand that if my Appellant/Petitioner's Opening Brief exceeds 13,000 words, my brief may be stricken and the appeal dismissed.**

_____
Date

_____
Joe Guerrero, Pro Se Appellant

_____
Susan DeHerrera, Pro Se Appellant