# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

Susan DeHerrera and Joe Guerrero
  Plaintiff/Petitioner - Appellant,

v.

Huerfano County, a municipality
Jeff Bensman, in his individual capacity
Terry Sandoval, in his individual capacity
Sam Jensen, in his individual capacity

Defendant/Respondent - Appellee.

Case No. 26-1138

Appellant/Petitioner's
Reply Brief

## REPLY BRIEF FROM APPELLANTS, PRO SE

Susan DeHerrera and Jose Guerrero
935 Cherrycrest Drive
Pueblo, CO 81005
(719) 750-8419
cfsdeh@gmail.com

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** …………………………………………….. 3

INTRODUCTION ………………………………………………………. 4

**I.** The District Court Treated the Open-Fields Doctrine as Dispositive Without Completing the Fourth Amendment Analysis Required by Appellants' Preserved Claims ……………………………………………………………. 5

**II.** Appellants' Property-Based Fourth Amendment Claim Required a Separate Constitutional Analysis Beyond the Open-Fields Determination …………………………………………………………… 7

**III.** The District Court Misapplied Rule 56 by Resolving Disputed Facts and Competing Inferences Against Appellants …………………………… 10

**IV.** Qualified Immunity Does Not Provide an Independent Basis for Affirmance ………………………………………………………… 14

**V.** If This Court Reverses the District Court's Fourth Amendment Ruling, the District Court's Disposition of the Monell Claim Should Likewise Be Reconsidered ………………………………………………….. 15

   **A.** Appellants Preserved Their Municipal Liability Theory ……………….. 15

   **B.** The Summary Judgment Record Contains Evidence from Which a Reasonable Factfinder Could Infer that the Challenged Investigative Conduct Reflected County Guidance Rather than the Independent Decisions of a Single Employee …………………………………………………… 16

   **C.** Other Record Evidence Corroborates Appellants' Contention that the July 13 Investigative Conduct Was Not Viewed as an Isolated Occurrence ……. 17

   **D.** Because the District Court's Monell Ruling Depended Upon Its Conclusion that No Constitutional Violation Occurred, that Ruling Should Likewise Be Reconsidered if the Fourth Amendment Claim Is Reinstated ………………… 18

**VI.** Appellees' Waiver Arguments Provide No Independent Basis for Affirmance …………………………………………………………………………… 19

    **A.** Appellants Preserved the Issues Presented in this Appeal ………………. 20

    **B.** Appellees Mistake Clarification for a New Theory ……………………… 20

    **C.** The Monell Argument Was Preserved ………………………………… 22

    **D.** None of Appellees' Waiver Arguments Independently Supports Affirmance ………………………………………………………………………….. 22

CONCLUSION …………………………………………………………… 23

CERTIFICATE OF COMPLIANCE WITH RULE 32A ……………………… 23

CERTIFICATE OF SERVICE ……………………………………………… 24

## TABLE OF AUTHORITIES

**Cases**

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) …………… 15–22

*United States v. Dunn*, 480 U.S. 294 (1987) ………………………………….. 6

*United States v. Jones*, 565 U.S. 400 (2012) ………………………………… 15

**Constitutional Provision**

U.S. Const. amend. IV ………………………………………….. 4–10, 13,15-18, 20-23

**Rules**

Fed. R. Civ. P. 56…………………………………………………… 4-5, 10-13

**INTRODUCTION**

This appeal concerns whether the district court correctly applied Fourth Amendment principles and Federal Rule of Civil Procedure 56 when it granted summary judgment in favor of Appellees. Appellants respectfully submit that it did not.

The district court concluded that Appellees committed no unconstitutional search because they remained outside the curtilage of Appellants' residence and therefore stood only in an open field. Having reached that conclusion, the court entered summary judgment for Appellees, held that Defendants Bensman and Sandoval were entitled to qualified immunity, and dismissed Appellants' municipal liability claims.

Appellees ask this Court to affirm by characterizing the appeal as presenting only a straightforward application of the open-fields doctrine. But that characterization narrows both the district court's analysis and the issues presented on appeal. Appellants do not challenge only the district court's curtilage determination. Rather, Appellants contend that the district court ended its Fourth Amendment analysis after resolving the open-fields question, failed to separately address the alleged physical investigative intrusion upon protected property and effects, resolved disputed factual inferences against Appellants despite the governing

summary judgment standard, and consequently treated qualified immunity and municipal liability as automatic consequences of an incomplete constitutional analysis.

Accordingly, this reply addresses each of those issues in turn. First, it explains why the district court's Fourth Amendment analysis did not fully resolve Appellants' preserved property-based claim. Second, it demonstrates that genuine disputes of material fact and competing reasonable inferences precluded summary judgment under Rule 56. Third, it explains why qualified immunity cannot independently support affirmance when the record is viewed under the proper summary judgment standard. Fourth, it addresses the district court's disposition of the municipal liability claims. Finally, it responds to Appellees' preservation and waiver arguments, demonstrating that the issues necessary to resolve this appeal were properly presented below and adequately raised in Appellants' Opening Brief.

## I. The District Court Treated the Open-Fields Doctrine as Dispositive Without Completing the Fourth Amendment Analysis Required by Appellants' Preserved Claims.

Appellees' response rests on the same premise adopted by the district court: because Defendants Bensman and Sandoval remained outside the curtilage of Appellants' residence, no Fourth Amendment search occurred. That premise, however, answers only one part of the constitutional question presented.

The district court identified the "determinative question" as whether Defendants entered the curtilage of Appellants' camper or remained in an open field. After concluding that Defendants remained outside the curtilage under the factors identified in *United States v. Dunn*, the court held that no unconstitutional search occurred.

Appellants do not dispute that curtilage is an important component of Fourth Amendment analysis. Nor do Appellants contend that every governmental entry upon rural property constitutes a constitutional violation. Rather, Appellants have consistently argued that this case also presents a separate property-based Fourth Amendment question arising from Defendants' alleged physical investigative intrusion upon protected property and effects. That theory was presented to the district court, raised in Appellants' Opening Brief, and addressed at length in Appellees' response.

The district court acknowledged Appellants' contention that "observation from an open field is different than a search of effects found within them," but rejected the argument by concluding that it did "not [accurately] characterize what happened here." The court then returned to its curtilage analysis and held that Defendants committed no unconstitutional search.

Respectfully, that conclusion assumes the very issue Appellants contend required independent analysis. The question is not simply whether Defendants stood within an open field. It is whether, viewing the summary judgment record in the light most favorable to Appellants, the alleged physical investigative conduct directed toward Appellants' property and effects required additional Fourth Amendment analysis beyond the open-fields doctrine alone.

That distinction matters because the Fourth Amendment protects more than houses. Its text separately protects "persons, houses, papers, and effects." Whether Appellants ultimately prevail on that property-based theory is a question to be resolved under the governing constitutional principles and the summary judgment record. It is not answered solely by determining that Defendants remained outside the curtilage.

Accordingly, Appellees' repeated assertion that this appeal concerns only open fields does not resolve Appellants' preserved argument. Instead, it repeats the same analytical premise adopted by the district court. Because that premise did not fully address the separate Fourth Amendment question presented, it cannot alone support affirmance.

**II. Appellants' Property-Based Fourth Amendment Claim Required a Separate Constitutional Analysis Beyond the Open-Fields Determination.**

The district court acknowledged Appellants' property-based theory but concluded that it did not accurately characterize the encounter. This proposition addresses the narrower question left by that conclusion: whether Defendants' alleged physical investigative conduct directed toward Appellants' property and effects required a separate Fourth Amendment analysis beyond the determination that Defendants remained outside the curtilage.

The Fourth Amendment protects not only houses, but also "persons, houses, papers, and effects." Appellants consistently argued that Defendants' investigative conduct implicated those independent constitutional protections by physically directing their investigation toward Appellants' property and domestic utility infrastructure, rather than merely observing activities from a lawful vantage point. That argument was presented below, developed in the summary judgment record, and renewed in Appellants' Opening Brief.

Appellees respond that the open-fields doctrine alone resolves the appeal. But that response assumes that every investigative action occurring outside the curtilage necessarily falls outside the Fourth Amendment, regardless of the nature of the governmental conduct directed toward protected property or effects. Appellants have never advanced such a broad proposition, nor does the Fourth Amendment require that result.

Instead, Appellants' position has remained consistent throughout these proceedings: although Defendants' physical location may bear upon one aspect of the constitutional inquiry, it does not automatically resolve whether their alleged investigative conduct constituted a search of constitutionally protected property or effects. Those are related questions, but they are not identical.

The district court's opinion demonstrates why that distinction matters. After determining that Defendants remained outside the curtilage, the court concluded that no unconstitutional search occurred. Appellants respectfully submit that this sequence effectively treated the open-fields determination as dispositive of the entire Fourth Amendment claim without separately evaluating the preserved property-based theory under the governing constitutional principles.

Appellants do not ask this Court to create a new rule of constitutional law. They ask only that the preserved property-based claim be evaluated independently rather than being treated as entirely subsumed within the curtilage analysis. Because that separate inquiry was not completed before summary judgment was entered, affirmance cannot rest solely upon the district court's open-fields determination.

**III. The District Court Misapplied Rule 56 by Resolving Disputed Facts and Competing Inferences Against Appellants.**

Even if this Court concludes that the district court correctly identified the relevant Fourth Amendment principles, summary judgment still cannot be affirmed if the court resolved genuine disputes of material fact or drew competing inferences in Appellees' favor. Rule 56 requires the opposite. At the summary judgment stage, the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in that party's favor.

Here, the district court concluded that no constitutional violation occurred after determining that the relevant facts established only an investigation conducted from an open field. In doing so, however, the court necessarily adopted Appellees' characterization of the record despite evidence from which a reasonable factfinder could reach a different conclusion.

The summary judgment record contains evidence concerning, among other things, Defendants' investigative conduct, the location and character of the property involved, the purpose and progression of the investigation, and the nature of the governmental intrusion. Appellants relied on deposition testimony, body-camera recordings, photographs, and other record evidence to demonstrate that those issues were genuinely disputed.

Appellees' response largely asks this Court to accept their interpretation of that evidence. But appellate review of summary judgment does not turn on which

interpretation is more persuasive. The question is whether a reasonable jury could accept Appellants' interpretation of the record when all evidence and reasonable inferences are viewed in their favor. Where competing interpretations of material facts exist, Rule 56 requires that those disputes be resolved at trial rather than on summary judgment.

This principle is especially important here because the disputed facts bear directly on the constitutional questions presented. Whether Defendants merely observed from a lawful vantage point, or instead engaged in a physical investigative intrusion directed toward constitutionally protected property and effects, depends upon factual inferences drawn from the record. Those inferences cannot properly be resolved against Appellants at summary judgment.

The body-camera recordings permit competing reasonable inferences regarding the nature and scope of Defendants' investigative conduct. According to the recordings, Defendants first observed Appellants' property from a public roadway before entering the property (Body-Worn Camera Video (GMT) 17:37:54-17:39:25). The recordings further depict Bensman near the work truck during the encounter with Appellants (Body-Worn Camera Video (GMT) 17:40:22–17:40:32), while Sandoval questioned the workers near the excavated trench regarding the well, permitting, licensing, and related matters (Body-Worn Camera

Video (GMT) 17:44:26; DeHerrera Video 2:49–3:24). After contacting the contractor to verify licensing and permitting information (Body-Worn Camera Video (GMT) 17:41:53–17:42:46), the recordings further depict Bensman asking the contractor to come to his office to continue the discussion (Body-Worn Camera Video GMT 17:43:15–17:43:48). The recordings also depict Defendants remaining on the property while continuing their discussion of the well system and related matters.

Appellants further contend that the summary judgment record contains additional evidence concerning the physical relationship between the well system and the RV that Appellants contend was not fully reflected in the district court's description of the property. Exhibit H to Bensman's Motion for Summary Judgment, Doc. 70, Ex. H (13-second video), depicts the layout of the well site and trench extending toward the RV, see Exhibit H at 0:06–0:07, and the pump installation connected to a temporary hose associated with installation of the residential water system that Appellants contend served the RV, see Exhibit H at 0:09–0:10. The DeHerrera video, which begins from substantially the same vantage point immediately before the encounter with Defendants, likewise depicts the layout of the well site and the substantial mound of dirt immediately beyond it, see DeHerrera Video 0:01–0:14, as well as the temporary hose connected to the pump, see DeHerrera Video 0:18–0:21. Viewing this evidence in the light most favorable to Appellants, a reasonable

factfinder could infer that the well system was being installed as part of the residential water system serving the RV and could reasonably support the inference that the physical configuration of the site limited visibility of the work area from the public roadway. According to Appellants, these competing reasonable inferences provide additional context for evaluating the nature and scope of Defendants' investigative conduct and further demonstrate that the summary judgment record could not properly be construed in Appellees' favor.

Accordingly, the district court's constitutional conclusions cannot be separated from its Rule 56 analysis. Appellants contend that the summary judgment record contains genuine disputes of material fact regarding the nature and scope of Defendants' investigative conduct. Viewing the evidence and the competing reasonable inferences in the light most favorable to Appellants, the district court could not properly resolve those factual disputes in Appellees' favor at the summary judgment stage.

## IV. QUALIFIED IMMUNITY DOES NOT PROVIDE AN INDEPENDENT BASIS FOR AFFIRMANCE

The district court further concluded that Defendants were entitled to qualified immunity because Appellants failed to establish the violation of a clearly established Fourth Amendment right. District Court Order at 7. Appellees likewise contend that qualified immunity provides an independent basis for affirmance. Appellees' Response Br. at 34. But qualified immunity does not alter Rule 56 or permit disputed facts and reasonable inferences to be resolved against Appellants.

In determining whether Defendants were entitled to qualified immunity, the district court was required to view the summary judgment record and all reasonable inferences in the light most favorable to Appellants. As discussed above, Appellants contend that the record permits competing reasonable inferences regarding the nature and scope of Defendants' investigative conduct. Those competing reasonable inferences could not properly be resolved against Appellants before determining whether a constitutional violation occurred.

Accordingly, Appellants further contend that the district court's qualified immunity analysis necessarily depended upon its conclusion that Defendants' conduct did not constitute a Fourth Amendment search. As explained in Propositions I and II, Appellants contend that the district court did not separately analyze whether Defendants' alleged physical investigative intrusion upon constitutionally protected effects independently constituted a search under the

property-based framework recognized in *United States v. Jones*. Viewing the summary judgment record in the light most favorable to Appellants, Appellants contend that qualified immunity therefore does not provide an independent basis for affirmance.

## V. IF THIS COURT REVERSES THE DISTRICT COURT'S FOURTH AMENDMENT RULING, THE DISTRICT COURT'S DISPOSITION OF THE MONELL CLAIM SHOULD LIKEWISE BE RECONSIDERED.

This appeal does not ask the Court to determine that Huerfano County is liable under Monell. Rather, Appellants contend that, if this Court concludes the district court erred in its disposition of the Fourth Amendment claim, the district court's disposition of the Monell claim should likewise be reconsidered because the summary judgment record contains evidence from which a reasonable factfinder could infer County policy, custom, legal guidance, or inadequate training.

### A. Appellants preserved their municipal liability theory.

Appellants consistently argued below that Huerfano County could be held liable under § 1983 because the summary judgment record supported findings that the challenged conduct reflected County policy, custom, legal guidance, or inadequate training. Those theories were presented in Appellants' Complaint, Plaintiffs' Motion for Summary Judgment, and Opening Brief. The district court rejected the

Monell claim after concluding that no underlying Fourth Amendment violation occurred.

**B. The summary judgment record contains evidence from which a reasonable factfinder could infer that the challenged investigative conduct reflected County guidance rather than the independent decisions of a single employee.**

Appellants presented evidence from which a reasonable factfinder could infer that the challenged investigative conduct reflected County guidance rather than the independent decisions of a single employee. Most notably, Bensman himself testified that he "always" conducted investigations when entering Appellants' property (Doc. 20-4 p. 30 at 18-20). When asked whether permission was required before entering or remaining on private property, he testified that permission was unnecessary because that was how he had been instructed (Doc. 20-4 p. 31 at 2-8). He further attributed those instructions to Huerfano County code enforcement policy and advice received from the County Attorney. *Id.*

Viewing that testimony in the light most favorable to Appellants, a reasonable factfinder could conclude that the challenged conduct reflected County guidance rather than an isolated departure by a single employee. At the summary judgment stage, the district court was required to draw all reasonable inferences in Appellants' favor rather than resolve competing inferences against them.

**C. Other Record Evidence Corroborates Appellants' Contention that the July 13 Investigative Conduct Was Not Viewed as an Isolated Occurrence.**

Other record evidence, while not independently establishing municipal liability, corroborates Appellants' contention that the July 13 investigative conduct was not viewed as an isolated occurrence.

Appellants presented testimony describing earlier encounters in which Bensman similarly entered private property, initiated investigations, continued investigative activity, and ultimately identified no violation. Those incidents included Appellants' testimony concerning a March 2021 backhoe delivery at their property, during which Bensman interrupted the delivery and initiated an investigation. (Doc 20-4 at pp. 7–8.) Appellants also presented testimony concerning a later encounter on neighboring private property in which Bensman, when asked the reason for his presence, responded that he was "just looking around." (Id. pp. 12–13.)

This evidence is consistent with Bensman's testimony that he routinely conducted investigations in this manner pursuant to County guidance. It is further corroborated by the July 13 recordings, which depict the Health Department's role in initiating the investigation (DeHerrera Video 3:14–4:06; Doc 70-2 p. 2 at 6). Sandoval's explanation that such investigations were routinely performed (DeHerrera Video 4:06–4:42), and Bensman's role in conducting the investigation

(DeHerrera Video 1:57–2:12; (Body-Worn Camera Video (GMT) 17:39:54–17:40:13). Viewed together, this evidence supports Appellants' contention that a reasonable factfinder could conclude the challenged conduct reflected County practices rather than the independent actions of a single employee.

**D. Because the district court's Monell ruling depended upon its conclusion that no constitutional violation occurred, that ruling should likewise be reconsidered if the Fourth Amendment claim is reinstated.**

The district court's disposition of the Monell claim followed its determination that Appellants failed to establish an underlying Fourth Amendment violation. Appellants contend throughout this appeal that the district court's Fourth Amendment analysis was legally and factually erroneous.

Because the district court concluded that Appellants failed to establish an underlying Fourth Amendment violation, it did not reach the factual questions that ordinarily govern municipal liability under Monell. If this Court concludes that the Fourth Amendment claim should proceed, those municipal liability issues should likewise be reconsidered on remand.

If this Court concludes that the district court erred in its disposition of the Fourth

Amendment claim, the district court's disposition of the Monell claim should likewise be reconsidered. The summary judgment record contains evidence from which a reasonable factfinder could evaluate whether the challenged investigative conduct reflected County policy, custom, legal guidance, or inadequate training. Those factual determinations should not be foreclosed by a summary judgment ruling resting on an erroneous constitutional analysis.

## VI. APPELLEES' WAIVER ARGUMENTS PROVIDE NO INDEPENDENT BASIS FOR AFFIRMANCE.

This section addresses Appellees' waiver arguments. Appellants contend that the issues presented in this appeal were preserved in the district court and properly raised in the Opening Brief, and that Appellees' characterization of portions of those arguments as new theories provides no independent basis for affirmance.

### A. Appellants Preserved the Issues Presented in this Appeal

The question is not whether every argument was expressed in identical language throughout the litigation. The question is whether the underlying issues were fairly presented to the district court.

Appellants' Complaint alleged an unconstitutional Fourth Amendment search and asserted municipal liability against Huerfano County. During summary judgment,

Appellants further argued that Defendants' investigative conduct implicated constitutionally protected effects and that the summary judgment record supported findings of County policy, custom, legal guidance, and inadequate training. Appellants' Opening Brief organized those same preserved issues for appellate review.

Appellants were required to present the substance of their claims to the district court, not to anticipate every evidentiary argument or refinement that might later develop through discovery or be presented on appeal. The Complaint, summary judgment briefing, and Opening Brief demonstrate that the substance of the issues presented here was fairly presented below.

## B. Appellees Mistake Clarification for a New Theory.

Appellees repeatedly characterize portions of Appellants' Opening Brief as presenting new theories. They do not.

The Opening Brief does not introduce a new Fourth Amendment claim, a new Monell claim, or a new cause of action. Rather, it explains why the evidence developed during discovery supports the claims that were already presented to and considered by the district court.

Discovery develops the evidentiary record. It does not create a new legal theory. That is precisely what occurred here.

As discovery progressed, the summary judgment record became more fully developed through deposition testimony, body-camera recordings, documentary evidence, and other materials submitted to the district court. Appellants' Opening Brief relies upon that developed record to explain why the district court's disposition of the preserved claims should be reversed. Explaining how the evidence supports a preserved claim does not transform that claim into a new legal theory.

Accordingly, Appellees' characterization of Appellants' arguments as "new theories" mistakes evidentiary development and appellate clarification for the assertion of new claims. The issues presented in this appeal are the same issues litigated before the district court, viewed through the fully developed summary judgment record.

**C. The Monell Argument Was Preserved.**

The reply does not expand Appellants' Monell claim. Rather, it explains why the evidence developed during discovery supports the same theory of municipal liability that was presented to the district court.

Appellants' Motion for Summary Judgment expressly argued that the evidence supported municipal liability based upon either inadequate training or an unwritten County policy permitting warrantless investigative conduct. That is the same Monell theory discussed in Proposition V.

The reply further explains why Bensman's testimony, together with the remainder of the summary judgment record, supports that preserved theory of municipal liability. It does not assert a new claim or advance a new legal theory.

**D. None of Appellees' Waiver Arguments Independently Supports Affirmance.**

Appellees' waiver arguments challenge the merits of Appellants' preserved claims rather than whether those claims were preserved. They therefore provide no independent basis for affirming the district court's judgment.

Because Appellees' waiver arguments do not provide an independent basis for affirmance, the Court should evaluate the appeal on the merits of Appellants' preserved Fourth Amendment and Monell claims.

**CONCLUSION**

For the foregoing reasons, Appellants respectfully request that this Court reverse

the district court's order granting summary judgment in favor of Appellees and

remand this matter for further proceedings consistent with this Court's opinion.

Appellants further request such other and further relief as this Court deems just and

proper.

## CERTIFICATE OF COMPLIANCE

**I certify that the total number of pages I am submitting as my Appellant/Petitioner's Reply Brief is 30 pages or less.**

Dated and respectfully submitted this 22nd day of July, 2026.

_____
Jose Guerrero, Pro Se Appellant


_____
Susan DeHerrera, Pro Se Appellant


## CERTIFICATE OF SERVICE

I certify that on July 22, 2026, I sent a copy of the Appellants/Petitioners' Reply

Brief to:

Leslie L. Schluter
Dagner, Schluter, Weber, LLC
8400 E Prentice, Suite 1401
Greenwood Village, CO 80111
e-mail: lschluter@lawincolorado.com

Matthew J. Hegarty, Esq.
Hall & Evans, LLC
1001 17th Street, Ste 300
Denver, CO 80202
email: hegartym@hallevans.com

William T O'Connell III, Esq
Thompson, COE, Cousins & Irons, LLP
1700 Broadway, Suite 900
Denver, CO 80290
Email: woconnell@thompsoncoe.com

**Via CM/ECF**

_____7/22/26_____
Date

_____
Jose Guerrero, Pro Se Appellant

_____
Susan DeHerrera, Pro Se Appellant